IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2017 Session



## CATHY GWEN AGEE SWAFFORD v. DANNY EARL SWAFFORD, SR.

**Appeal from the Circuit Court for Bledsoe County**
No. 4381    Jeffrey F. Stewart, Chancellor
_____

### No. E2017-00095-COA-R3-CV
_____

This is a divorce action involving the classification of the parties' separate and marital property and equitable division of the marital assets. Because we are unable to discern whether the trial court classified the wife's retirement accounts as marital or separate property prior to its division of the marital estate and because the trial court failed to make sufficient findings of fact regarding several items of property prior to the distribution, we hereby vacate the trial court's distribution of marital property. We remand this matter to the trial court for entry of sufficient findings of fact and conclusions of law regarding the classification, valuation, and ultimate distribution of the parties' marital property.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Cindy Morgan, Sparta, Tennessee, for the appellant, Danny Earl Swafford, Sr.

Randal R. Boston, Crossville, Tennessee, for the appellee, Cathy Gwen Agee Swafford.

## OPINION

I. Factual and Procedural Background

Cathy Gwen Agee Swafford ("Wife") and Danny Earl Swafford, Sr. ("Husband") were married in 2003. The parties initially separated in 2007. Wife filed a complaint for divorce on August 8, 2007, asserting that the parties owned certain real and personal

property, which she requested that the trial court equitably divide. Wife also sought an equitable division and allocation of the parties' substantial debt. Husband filed an answer on May 2, 2008, averring that the parties had reconciled and had been living together until mid-April 2008. Husband thereby requested that the complaint be dismissed. On appeal, the parties agree that they had reconciled for a period of time and eventually separated in April 2008. Following the final separation, Wife pursued the previously filed divorce proceedings.

On August 9, 2007, Wife filed a motion seeking a *pendente lite* order directing that Husband be solely responsible for the payment of certain marital debts. This motion was not addressed by the trial court until Wife filed a subsequent motion requesting similar relief on June 8, 2008. The trial court entered an order dated July 11, 2008, concerning a June 23, 2008 hearing conducted regarding Wife's motions. The court noted that Husband had failed to appear after receiving proper notice regarding the hearing. The court's order reflects that Husband had advised his attorney that he was "'in the hay field'" and could not be present. In its July 11, 2008 order, the court awarded to Wife certain personalty that she had owned prior to the marriage. The court also determined that Husband would be solely responsible for the debts related to the "farming, logging and sawmill businesses," including debts owed to Ag Credit, First National Bank, New Holland Credit/CNH Capital Operations, Discover, and Mastercard. The trial court reserved all remaining issues for trial.

On October 14, 2008, Husband filed a motion seeking to set aside the trial court's previous order, stating that he had not been provided advance notice of the hearing date. Husband subsequently filed a motion seeking disbursement of certain funds held by Wife's employer, Mountain Farm Equipment, which had sold farm equipment for the parties on consignment.

The trial court conducted a trial on August 1, 2012, and entered a "Decree of Divorce" on October 15, 2012. The court awarded a divorce to Wife based upon Husband's stipulation that grounds existed. The remaining issues were reserved for a later hearing. On August 19, 2013, the trial court entered an "Order Amending Decree of Divorce," which restored Wife's prior surname of "Agee."

On May 4, 2015, Husband filed a motion seeking the recusal of Judge Justin Angel from presiding in the matter. Husband asserted that Judge Angel had recently practiced with Wife's former attorney during the pendency of the action. Judge Angel entered an order of recusal on July 22, 2015. On July 28, 2015, Chancellor Jeffrey Stewart was appointed to hear the case by interchange. On August 3, 2015, Wife filed a motion alleging that Husband was in contempt of court for failing to pay the debts previously allocated to him by the trial court's *pendente lite* order. On November 4,

2015, Wife filed an additional motion, requesting that Husband be held in contempt for failing to appear at mediation.

The trial court conducted a hearing on October 24, 2016, and subsequently entered an order on December 19, 2016, wherein the court distributed the parties' assets and debts. The court determined that by the time of trial, most of the parties' assets "were gone" because the marital residence had been foreclosed upon and many other assets had been sold after Husband failed to pay the debts he was previously ordered to pay. In its equitable division of the marital assets, the trial court referred to Trial Exhibit 17, which was a list of assets and debts prepared for trial. The court ordered that all marital property marked as "hers" on Exhibit 17 would be awarded to Wife and that the remaining marital property listed on Exhibit 17 would be sold with the proceeds divided equally between the parties.

Additionally, the court awarded to Wife as her "sole and separate property" the entire amount of her retirement accounts and her personal checking account. The court ordered Husband to repay Wife $25,000.00, representing approximately half of the equity in the marital home that had been lost by reason of foreclosure. The court also ordered Husband to repay Wife $14,945.00, representing proceeds from the sale of Wife's separate real property that had been used to pay a debt allocated to Husband. Husband was further ordered to reimburse Wife $6,000.00, which represented Husband's half of certain joint debts that were paid by Wife after Husband had failed to pay debts the court had ordered him to pay. Husband timely appealed.

## II. Issue Presented

Husband presents the following issue for our review, which we have restated slightly:

Whether the trial court erred by failing to equitably divide the parties' marital property.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of appellate review as follows:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures."

- 3 -

*Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Furthermore, as this Court has previously held:

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

IV.  Marital Property Distribution

Husband contends that the trial court erred by failing to distribute the marital property in an equitable fashion for several reasons.  In support of his argument, Husband asserts that the trial court "did little to set forth a declaration of separate and/or marital property."  Upon our thorough review of the trial court's findings and conclusions, we determine that the trial court's final judgment is unclear regarding the court's classification of Wife's retirement accounts.

When equitably distributing the marital property, the trial court should first identify all property interests at issue in the divorce proceeding.  *See Keyt*, 244 S.W.3d at 328.  After identifying the property interests, the trial should then classify the property as either marital or separate property.  *Id.*  It is well settled that a trial court must identify all assets of the parties in divorce proceedings as either separate or marital property prior to equitably distributing the marital property.  *See Keyt*, 244 S.W.3d at 328; *McHugh,* 2010 WL 1526140, at *3-4.  The classification of the property "is an important threshold matter because courts do not have the authority to make a distribution of separate property." *Summer v. Summer*, 296 S.W.3d 57, 60 (Tenn. Ct. App. 2008).

The version of Tennessee Code Annotated § 36-4-121(b)(1) (2005) in effect when this action was commenced defined marital property as follows:

(A)  "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

(B)  "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Separate property is statutorily defined as follows:

- 5 -

(A)     All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B)     Property acquired in exchange for property acquired before the marriage;

(C)     Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)     Property acquired by a spouse at any time by gift, bequest, devise or descent; . . .

Tenn. Code Ann. § 36-4-121(b)(2) (2017).

We note that the Tennessee Supreme Court has previously determined that the appreciation of a retirement account funded during the marriage is deferred compensation and is marital property subject to division during divorce. *See Langschmidt v. Langschmidt*, 81 S.W.3d 741, 749 (Tenn. 2002) ("Retirement benefits accrued during the marriage clearly are marital property under Tennessee law."). However, our Supreme Court also held in *Langschmidt* that "the appreciation of a spouse's IRA during the marriage is separate property when funded completely with premarital earnings and absent substantial contribution by the other spouse to the preservation and appreciation of the IRA." *Id.* at 742. The High Court thereafter clarified its previous holding in *Langschmidt* and emphasized that the IRAs at issue in *Langschmidt* were not a product of the spouse's employment, did not involve deferred compensation, and had been funded entirely by premarital funds. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 255 (Tenn. 2009). The Court in *Snodgrass* further held "that 401(k) accounts held through a spouse's employer are 'retirement or other fringe benefit rights relating to employment.'" *Id.*

In the case at bar, it is unclear whether the trial court classified Wife's retirement accounts as her separate property or as marital property. In its judgment, the trial court awarded to Wife the entirety of her retirement accounts "as her sole and separate property." According to Wife's testimony during cross-examination, she owned two retirement accounts prior to the marriage, totaling approximately $12,937.00. The record reflects that Wife had two retirement accounts at the time of marriage, one at Mass Mutual containing $8,135.39 and another at Oppenheimer Funds containing $4,133.08. By our calculations, these funds actually totaled $12,268.47 near the time of marriage. The financial statements regarding Wife's retirement accounts at the time of the final

- 6 -

divorce hearing were not included in the record, but both parties listed the appreciation in value of Wife's retirement accounts during the marriage to be $48,521.41. Although Wife's attorney stated in opening statements that Wife maintained a retirement account that had "some growth to it from her contributions and her employer's contribution," Wife contended that the retirement account was separate property and that "the growth [was] due to market conditions and investments that she made after the parties' separation."[1] Husband, however, requested that the court treat the retirement accounts as marital property. Except for the combined amount of growth of the accounts, neither party presented evidence regarding whether the appreciation in value was due to continued contributions, market conditions, or both.

In its judgment distributing the marital property, the trial court ordered that Wife was to be awarded "all marital property listed as 'hers' on Exhibit #17" and that "all other marital property listed on Exhibit #17 shall be sold and the proceeds divided equally between the parties." We note that on Exhibit 17, Wife's retirement accounts are listed under the heading, "Marital Assets," but they are not designated as "hers." Thus, it would initially appear that the court intended for Wife's retirement accounts to be divided equally. Within the next provision of the trial court's judgment, however, the court specifically awarded to Wife "her Retirement account as her sole and separate property." The trial court's initial reference to "all marital property" listed on Exhibit 17, which included Wife's retirement accounts, coupled with its subsequent award of the retirement accounts as Wife's "sole and separate property," created an ambiguity concerning whether the trial court had classified the appreciation in Wife's retirement accounts as marital or separate property.

In view of the foregoing, we discern that the trial court's order can be interpreted in two ways. First, the trial court may have classified the appreciation in the retirement accounts as marital property and awarded that appreciation to Wife as part of its equitable distribution of the marital estate. However, the trial court failed to make sufficient factual findings or distinguish between the premarital portion of the accounts and the amount that had appreciated during the marriage. Second, the trial court may have classified the accounts as Wife's separate property not subject to division. Following a thorough review of the record, we conclude that the trial court's classification of Wife's retirement accounts is unclear, which precludes our review of whether the trial court's marital property distribution was equitable.

---

[1] Both Wife's counsel and the trial court referred to Wife's retirement accounts as a single account in the record. However, testimony and exhibits admitted at trial established that Wife had two retirement accounts prior to the marriage. The record, therefore, is unclear as to which account, or both, Wife's attorney and the trial court were referring.

Further complicating this Court's review of the trial court's distribution of marital assets is the absence in its final judgment of findings of fact regarding the values of certain items of property. As this Court has explained:

> The valuation of a marital asset is a question of fact. It is determined by considering all relevant evidence, and each party bears the burden of bringing forth competent evidence. *See Wallace v. Wallace,* 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence. *See Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace v. Wallace,* 733 S.W.2d at 107.

*Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

In previous cases when the appellate court was unable to perform a review of whether the distribution of marital property was equitable, due to the absence of sufficient findings of fact relating to the valuation of marital property in combination with other deficiencies, this Court has remanded the matter to the trial court for entry of sufficient findings of fact regarding the value of the parties' assets. *See, e.g., Smith v. Smith*, No. E2017-00515-COA-R3-CV, 2017 WL 6467153, at *5 (Tenn. Ct. App. Dec. 18, 2017) ("Even if the trial court's findings regarding the retirement benefits were clarified, we still could not determine whether the distribution of the marital estate was equitable due to the lack of any findings to review regarding the valuation of the assets and debts or the statutory factors."); *Irvin v. Irvin*, No. M2010-01962-COA-R3-CV, 2011 WL 2436507, at *11 (Tenn. Ct. App. June 15, 2011) (remanding for sufficient findings of fact where the judgment was ambiguous and failed to provide valuations for the marital property.).

Although the trial court refers to Exhibit 17 when distributing property, it does not specifically adopt the values of the assets reflected in the exhibit. Tennessee Court of Appeals Rule 7 requires that briefs in domestic relations cases contain a tabulation of the parties' property and debts with values assigned by each party and the trial court, including citations to the record identifying where such information may be found. In the instant action, the parties' respective tabulations of property reflect their differing opinions concerning the respective values of several items of property without a corresponding finding of value by the trial court. In other words, notwithstanding that the parties assigned differing values for certain assets, the trial court did not assign its value to those assets. Certain of those assets, such as the farming and logging equipment, generators, a lawnmower, and an air compressor, could be of significant value or of little worth.

Tennessee Rule of Civil Procedure 52.01 requires that following a bench trial, a trial court shall make appropriate findings of fact and separate conclusions of law. With reference to Rule 52.01, this Court has explained:

> [T]he requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.,* No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody,* 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce,* 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.,* 2009 WL 1362314, at *8 (quoting *In re M.E.W.* No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)). Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law," unless the trial court's decision involves only a clear legal issue or the trial court's decision is readily ascertainable. *Lake v. Haynes,* No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011); *Burgess v. Kone, Inc.,* No. M2007-02529-COA-R3-CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008).

*Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003, at *6 (Tenn. Ct. App. Mar. 9, 2015).

In this case, the issues concerning the classification and subsequent distribution of the parties' marital property do not involve a clear legal issue, nor is the basis for the trial court's division of the marital estate "readily ascertainable." *See id.* The equitable division of marital property is a fact-intensive inquiry, and in the absence of sufficient findings of fact and conclusions of law regarding the classification of all property at issue, we cannot determine whether the overall distribution of marital property, including the distribution of Wife's retirement accounts and the marital debts, is equitable. *See, e.g., Morton v. Morton*, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005) (holding that this Court must determine whether the overall property distribution is equitable rather than focusing on one asset). Accordingly, we must vacate the trial court's property distribution and remand this matter to the trial court for entry of appropriate findings of fact and conclusions of law supporting its classification, valuation, and ultimate distribution of the parties' assets. *See* Tenn. R. Civ. P. 52.01.

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's distribution of marital property and remand this matter to the trial court for the entry of appropriate findings of fact and conclusions of law supporting its classification, valuation, and ultimate distribution of marital property. Costs on appeal are taxed one-half to the appellant, Danny Earl Swafford, Sr., and one-half to the appellee, Cathy Gwen Agee Swafford.

_____

THOMAS R. FRIERSON, II, JUDGE